IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SMART COMMUNICATIONS HOLDING, INC., <br><br> Plaintiff, <br><br> v. <br><br> VENDENGINE, INC., <br><br> Defendant. | NO. 3:21-cv-00053 <br><br> JUDGE RICHARDSON |

# MEMORANDUM OPINION AND ORDER REMANDING TO STATE COURT

Pending before the Court is Plaintiff's Motion to Remand (Doc. No. 14, "Motion").[1] Plaintiff filed a memorandum in support of the Motion (Doc. No. 15). Defendant filed a response (Doc. No. 20, "Response), whereafter Plaintiff filed a reply (Doc. No. 21, "Reply").

For the reasons discussed herein, the Court will grant Plaintiff's motion.

## BACKGROUND

A. Factual Background[2]

Plaintiff, Smart Communications Holding, Inc. ("Smart Communications"), is a Florida corporation. (Doc. No. 1-1 at ¶ 2). Defendant, VendEngine is a Tennessee corporation. *Id.* at ¶ 3.

Smart Communications created a postal-mail-elimination system called MailGuard, which allows for efficient mail screening and distribution in detention facilities. *Id.* at ¶¶ 7-15. Smart

---

[1] Also pending before the Court is Defendant's Motion to Dismiss (Doc. No. 8). Briefing on the Motion to Dismiss was stayed pending the Court's resolution of the Motion to Remand. (Doc. No. 17).

[2] The Court takes these background facts from the Complaint and, as indicated below, accepts them as true for purposes of the Motion.

Communications met with Rutherford County to discuss Rutherford County using MailGuard in its detention center. *Id.* at 17. Rutherford County instructed its commissary vendor, VendEngine, to work with Smart Communications to effectuate this move. *Id.* at 18. VendEngine and Rutherford County entered into an agreement, but VendEngine and Rutherford County abruptly ceased communications with Smart Communications after they had received Smart Communications's trade secrets. *Id.* at 20-23. VendEngine then launched an application called MailRoom that Rutherford County subsequently implemented in its detention facility. *Id.* at 24. This application has many of the same functions as does Smart Communications's MailGuard. *Id.* at 27-29. HLFIP had patented MailGuard (United States Patent No. 10,291,617) and sued Rutherford County in this Court for patent infringement in *HLFIP Holdings, Inc. d/b/a Smart Commc'ns IP Holdings v. Rutherford Cty., TN, et al.*, No. 3:19-cv-00714.

B. Procedural Posture

Smart Communications instituted this action by filing a complaint (Doc. No. 1-1) against Defendants in Tennessee state court, namely, the Chancery Court of Davidson County. In the complaint, Smart Communications asserted claims (all under state law) for breach of contract, violation of the Tennessee Uniform Trade Secrets Act, promissory fraud, unfair competition, and to recover attorney's fees in a related patent infringement case, *HLFIP Holdings, Inc. d/b/a Smart Commc'ns IP Holdings v. Rutherford Cty., TN, et al.*, No. 3:19-cv-00714, (M.D. Tenn. Oct. 21, 2019.). (Doc. No. 1-1 at ¶ 30-73). The last of these claims is of a type (hereinafter, "*Pullman* claim") authorized under *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336 (Tenn. 1985).[3]

---

[3] *Pullman* establishes two kinds of claims, one called "indemnity" and the other called "independent-tort of another." *Engstrom v. Mayfield*, 195 Fed. App'x 444, 451 (6th Cir. 2006). The former kind of *Pullman* claim is available to those who seek indemnification from being forced to defend themselves in litigation. Although the Complaint captions Plaintiff's *Pullman* claim as one for "[i]ndemnity," this claim is actually undeniably of the "independent-tort-of-another" kind because it clearly seeks attorney's fees allegedly

On January 22, 2021, VendEngine removed the case to this Court under 28 U.S.C. §§ 1441, 1446, and 1454, asserting primarily that this Court has so-called federal-question jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's *Pullman* claim requires resolution of a question of (federal) patent law. (Doc. No. 1 at ¶¶ 6, 12-15).[4]

On February 10, 2021, Plaintiff filed the Motion, which seeks to remand this entire action to state court (and not just all claims other than the *Pullman* claim, which, as noted in a footnote below, theoretically could be a possibility here). According to Plaintiff, remand pursuant to 28 U.S.C. § 1447 is appropriate because (again according to Plaintiff): (a) the so-called forum-defendant rule bars removal based on diversity jurisdiction when the defendant is a citizen of the forum state, and VendEngine is a citizen of Tennessee; and (b) federal-question jurisdiction is lacking because Plaintiff's claims all were state-law claims, and the *Pullman* claim does not "arise under" federal law. (Doc. No. 14 at 1-13). Thereafter, the Response and Reply were filed.

---

incurred not in defensive litigation, but rather in offensive litigation Plaintiff took against a purported tortfeasor that supposedly injured Plaintiff.

[4] Defendant also asserted that Plaintiff's other claims "are removable pursuant to 28 U.S.C. § 1441(c) as they would be joined with a separate and independent cause of action [*i.e.*, the *Pullman* claim] with[in] the jurisdiction of the district courts of the United States as conferred by 28 U.S.C. § 1331." (Doc. No. 1 at ¶ 16). Defendant then undertook to explain why the other causes of action fell within this Court's supplemental jurisdiction and diversity jurisdiction. (*Id.* at ¶ 17, 18); this attempted explanation was necessary in furtherance of Defendant's attempt to keep all claims (and not just the *Pullman* claim) in federal court, because if one claim in a removed action arises under federal law, but other claims either are not within the original or supplemental jurisdiction of the district court or have been made nonremovable by statute, the entire action may be removed but then the district court must sever those other claims and remand them to state court. *See* 28 U.S.C. §§ 1441(c). This means that if the *Pullman* claim in fact arises under federal law, the entire action is removable, but then the Court would be required to determine whether some or all of the other claims must be severed and remanded while the *Pullman* claim remains in this Court. For this reason, when the Court refers to removability (or lack thereof) based on the *Pullman* claim, it is referring to removability (or lack thereof) of the entire case (and not just the *Pullman* claim) based on the *Pullman* claim—with the understanding that if the Court were to find that the entire case indeed was removable (and thus properly removed by Defendant), the practical effect of that finding potentially could be largely eviscerated by the subsequent remand of one or more of the claims other than the *Pullman* claim.

## LEGAL PRINCIPLES CONCERNING REMOVAL

In *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir. 2007), the Sixth Court discussed "first principles of removal jurisdiction."

> Defendants sued in state court generally may remove the suit to federal district court if the district court has original jurisdiction over the suit. 28 U.S.C. § 1441(a) ("Except as expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). Thus, state-court lawsuits involving federal questions are removable: "Any civil action of which the district courts have original jurisdiction found on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b).
>
> To determine whether a claim arises under federal law, a court, under the well-pleaded-complaint rule, generally looks only to the plaintiff's complaint. ). If the complaint relies only on state law, the district court generally lacks subject-matter jurisdiction, and the action is not removable. This makes the plaintiff the master of the complaint; the plaintiff may simply avoid federal jurisdiction by relying exclusively on state law.

*Id.* at 324–25 (case citations omitted).

*Gentek Bldg. Prod.* was focused on removal based on federal-question jurisdiction, but inasmuch as diversity of citizenship of the parties is an alternative basis for original jurisdiction ("diversity jurisdiction") in federal court, 18 U.S.C. § 1332, where appropriate a case may be removed to federal court based on diversity of citizenship. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83–84 (2014).

But the forum-defendant rule, codified at 28 U.S.C. § 1441(b)(2), renders removal improper in some cases even where the federal court would have had diversity jurisdiction had the case been filed initially in federal rather than state court. Under the forum-defendant rule, an action may not be removed from state court solely based on diversity jurisdiction if the defendant is a citizen of the state in which the action is brought. 28 U.S.C. § 1441(b)(2). If a claim arises under

federal question jurisdiction, then the forum-defendant rule does not apply.[5] If the *Pullman* claim arises under patent law, federal law bars its remand to state court.[6]

As noted in part above, "[t]o determine whether the claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007). "There are exceptions to the well-pleaded complaint rule. One exception is the artful-pleading doctrine: plaintiffs may not avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims. A [second] exception is the complete-preemption doctrine: removal is proper when a federal statute wholly displaces the state-law cause of action through complete pre-emption. A third exception is the substantial-federal-question doctrine, which applies where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Id.* (quotation marks, citations, and edits omitted).

## DISCUSSION

Under the well-pleaded complaint rule, Plaintiff's claims do not arise under federal law because they do not state a federal claim. Thus, removal here is appropriate, if at all, only under one of the exceptions to the well-pleaded complaint rule. The only exception that Defendant raises is the substantial federal question doctrine.

---

[5] Ordinarily, "because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile . . . all doubts [are] resolved in favor of remand." *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 550 (6th Cir. 2006). But when the potential federal question grants federal courts exclusive original jurisdiction, as is the case with claims arising under patent law, then improper remand would result in a futile state court judgment. Therefore, it's not necessarily the case here that all doubts should be resolved in favor of remand.

[6] "No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." 28 U.S.C. § 1338.

A. Substantial-federal-question

A claim may arise under federal law even if the complaint does not reference federal law, if it falls under the substantial-federal-question doctrine. Under that doctrine, "[e]ven though state law creates[the plaintiff']'s causes of action, its case might still "arise under" the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 13–14 (1983).

"Federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met . . . jurisdiction is proper [.]" *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007); *Forrester Env't Servs., Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329, 1333 (Fed. Cir. 2013).

1. Necessarily raised and disputed

Defendant argues that there are four federal questions (the second of which seemingly would involve numerous sub-questions necessarily raised by the *Pullman* claim): 1) whether "patent law treats Smart Communications and HLFIP as interchangeable corporate parties," 2) the "substance, scope, and validity of HLFIP's patent," 3) "whether Rutherford County and VendEngine infringe that patent," and 4) whether 35 U.S.C. § 285 preempts *Pullman*. (Doc. No. 20 at 2, 11, 17). A state claim necessarily raises a disputed federal issue if plaintiff's right to relief requires answering disputed federal question. *Mikulski* at 565-566. Among these federal questions proposed by Defendant, only the substance and scope of HLFIP's patent is even at least arguably necessarily raised.

First, to adjudicate Plaintiff's *Pullman* claim, a court need not decide whether *patent law* treats Smart Communications (Plaintiff) and HLFIP as interchangeable. The Court does not dispute Defendant's suggestion that Smart Communications (the party now seeking under *Pullman* to recover previously incurred attorney's fees) should not prevail on its *Pullman* claim unless it is equated with HLFIP (the party that incurred those attorney's fees). But this suggestion needs to be qualified; to prevail on its *Pullman* claim, Smart Communications needs to be equated with HLFIP only for purposes of Tennessee state law (*Pullman* in particular), and not for purposes of (federal) patent law. That is because the *Pullman* claim of course arises under *Pullman*, not the Patent Act. The question is whether HLFIP's prior patent suit is considered to be one "involv[ing] plaintiff [meaning, here, the current Plaintiff, Smart Communications] in litigation with a third person" under *Pullman*. 693 S.W.2d at 340. If Smart Communications can be equated with the party (HLFIP) that was involved in the prior patent suit against third persons (Rutherford County and its co-defendants in the prior litigation), then Smart Communications can avail itself of a *Pullman* claim, and the appropriateness of such an equation is simply not a matter of patent law.

Second, to decide Plaintiff's *Pullman* claim, a court need not rule on the validity of HLFIP's patent. This is because under the "independent tort of another" version of the *Pullman* claim, the plaintiff need not prove that the defendant in the first lawsuit (hereinafter, "third person") acted tortiously; instead the plaintiff need prove only that the defendant in the (later) action in which the *Pullman* claim was brought (hereinafter, "*Pullman*-claim defendant") acted tortiously and caused the plaintiff "to act in the protection of his interests by bringing . . . an action against [the] third person." *Pullman*, 693 S.W.2d at 340. As *Pullman* put it, "[w]here the natural and proximate consequence of a tortious act of [the *Pullman*-claim defendant has been to involve plaintiff in litigation with a third person, reasonable compensation for attorneys' fees incurred by

plaintiff in such action may be recovered as damages against the author of the tortious act." *Id.* See also *Grace v. Grace*, No. W201600650COAR3CV, 2016 WL 6958887, at *7 (Tenn. Ct. App. Nov. 29, 2016) (quoting *Pullman*, 693 S.W.2d at 340).

With regards to substance and scope of the patent, for Plaintiff to prevail on the *Pullman* claim, the state court need only rule that the patent would reasonably lead HLFIP to sue based on VendEngine's conduct. Under *Pullman*, if the tort (the so-called "independent tort") of the *Pullman*-claim defendant "naturally and proximately" caused the plaintiff to sue the third person in the first action, the plaintiff has a valid claim against the *Pullman*-claim defendant *irrespective* of whether the third person acted tortiously. In other words, the plaintiff need not have been *correct* in alleging in the first action that the third person acted tortiously; instead, the plaintiff need only (i) have been naturally and proximately prompted (caused) to sue the third person (ii) by a tortious act of the *Pullman*-claim Defendant. Nevertheless, it stands to reason that in the instant case, for Plaintiff to reasonably have been prompted to sue the third party (Rutherford County) for patent infringement, the claim of patent infringement must have been objectively reasonable considering, *inter* alia, the patent itself. There is also a significant likelihood that, in litigating the *Pullman* claim, VendEngine will dispute that Smart Communications had an objectively reasonable basis to claim infringement.[7] To that extent, the substance and scope of the patent may very well be a necessarily raised and disputed issue of federal law, and below the Court assumes arguendo that this is the case.

Notably, Plaintiff's *Pullman* claim in this case tracks the above-referenced two requirements fairly closely. Plaintiff alleges that it (*i.e.*, HLFIP d/b/a Smart Communications) was

---

[7] For purposes of this opinion, a decision on the "substance and scope of the patent" refers to a determination as to whether the language of the claims set forth in the patent made HLFIP's claim of patent infringement objectively reasonable (considering also the alleged infringing conduct).

prompted (in effect, allegedly, naturally and proximately) to sue Rutherford County and its co-defendants to protect its interest by particular alleged conduct by Defendant that is allegedly tortious under state (not federal law)—namely, Defendant's alleged misappropriation of Defendant's trade secrets and confidential information. The theory seems to be that (i) had not Defendant engaged in this (alleged) tortious conduct, the issues of whether HLFIP's patent was valid and infringed by Rutherford County never would have arisen, and (ii) a natural and proximate result of these issues having arisen was for Plaintiff to file suit seeking to assert its rights under its patent by making a claim of infringement.

Third, it is likewise possible for a court to make the above-referenced two required determinations without deciding whether the HLFIP patent was infringed (by Rutherford County, which was the third person in the first action, or for that matter by anyone else).

The undersigned does not mean to suggest herein that he embraces Plaintiff's version of the facts, or Plaintiff's claim that those alleged facts actually support a claim of misappropriation of trade secrets and confidential information. The Court takes no position on such matters. And the undersigned does not mean to suggest that he is a proponent of the recognition of a *Pullman* claim under these circumstances; perhaps he has reservations about that the same way the Sixth Circuit had some reservations about the recognition of a *Pullman* claim under the particular circumstances involved in *Engstrom v. Mayfield*, 195 F. App'x 444, 452 (6th Cir. 2006) ("find[ing] it troubling that under the current state of the law in Tennessee," plaintiffs had a cognizable claim under *Pullman).* But any such reservations are "immaterial to [the Court's] disposition of this case because [it is] constrained to follow the law of Tennessee as [it[ interpret[s]" such law. *Id.* And for the reasons set forth above, the Court interprets Tennessee law to allow for an "independent tort

of another" version of a *Pullman* claim here even without any ultimate adjudication of the actual substance, scope, validity (or lack thereof), and infringement (or lack thereof) of the HLFIP patent.

Fourth and finally, Defendant suggests that a state court would have to consider whether 35 U.S.C. § 285 preempts *Pullman* in this case. (Doc. No. 20 at 17). That statute provides, with respect to patent-infringement actions, that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Defendant asserts that "[u]nlike allegations of breach of contract or a general tort, Congress has provided that attorney's fees for alleged patent infringement can be recovered only if a patent owner proves infringement AND that the circumstances of the case are 'exceptional.'" (Doc. No. 20 at 17). From that premise, Defendant argues that "[d]etermining whether the limited availability of attorney's fees under the Patent Act preempts the causes of action set forth in *Pullman* necessarily implicates federal law." *Id.*

"[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). The Federal Circuit has applied this principal in stating that even if remedies might be preempted by federal patent law, that does not raise a substantial question of federal law. *Forrester Env't Servs., Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329, 1335 (Fed. Cir. 2013). Therefore, even if 35 U.S.C. § 285 did preempt the *Pullman* claim, such preemption would not be basis for removal.

2. Substantiality

As noted above, a court deciding whether VendEngine's conduct naturally caused the patent suit may well have to determine decide something about the substance and scope of the patent. And this determination may be disputed by VendEngine in challenging the *Pullman* claim. But even if a disputed federal question were necessarily raised by Plaintiff's complaint, the

substantial-federal-question doctrine still would be inapplicable unless such question was "substantial."

The Sixth Circuit has identified four factors to guide the substantiality prong of the substantial-federal-question test: "(1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated)." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007) (en banc).

The Federal Circuit has identified three factors for the substantiality prong: 1) whether a pure issue of federal law is dispositive of the case, 2) whether the court's resolution of the issue will control numerous other cases and 3) whether the Government has a direct interest in the availability of a federal forum to vindicate its own administrative action. *Inspired Development Group, LLC v. Inspired Products Group, LLC*, 938 F.3d 1355, 1364 (2019) (quoting *NeuroRepair v. The Nath Law Grp.*, 781 F.3d 1340, 1345 (Fed. Cir. 2015)).[8] In essence, they amount to the *Mikulski* factors, minus the inquiry into whether the federal question is "important" (an inquiry that overlaps anyway with the inquiry into whether the resolution will resolve the case at hand, at least where the latter inquiry is answered in the affirmative and thus makes clear that the federal question is "important" at least in the case at hand).

---

[8] These three items were described by *NeuroRepair* (and likewise by *Inspired Dev. Grp.* when quoting *NeuroRepair*) as situations indicating that "a substantial federal issue is more likely to be present." *Inspired Dev. Grp.*, 938 F.3d at 1364 (quoting *NeuroRepair*, 781 F.3d at 1345). But the analysis in *Inspired Dev. Grp.* makes clear that this description is incomplete; it is not just that a substantial issue is more likely to be present when these three respective situations are presented; it is also that a substantial issue is less likely to be present when these three respective situations are not presented. That is, they are indeed "factors," each of which can cut either for or against the finding of a substantial federal issue. *Id.*

Assuming *arguendo* that some question concerning the patent's substance and scope is necessarily raised by Plaintiff's Complaint, it is not a substantial question considering the applicable factors identified by Sixth Circuit precedent.

First, the case does not include a federal agency. This factor weighs against "substantial[ity]" (and thus weighs in favor of remand).

Second, any federal question concerning the substance and scope of the patent to the extent that a court hearing the *Pullman* claim would have to decide is trivial. At most, granting *Pullman* relief answers the question of whether the patent suit is frivolous. But it does not answer the more significant questions of infringement or validity.

Third, a decision on the question of the substance and scope of HLFIP's patent would not by itself necessarily be dispositive of the *Pullman* claim. Even if the questions were answered in a way that supports Plaintiff's *Pullman* claim, the *Pullman* claim still would require other issues to be resolved in Plaintiff's favor, especially the issue of whether Defendant engaged in tortious activity.

Fourth, a state court decision on the substance and scope of the patent supposedly at issue in this case would not control other cases. The Federal Circuit has held that because state court decisions regarding patent law do not control federal courts, there is little risk of state court resolution of this issue controlling numerous other cases. *Inspired Dev. Grp., LLC v. Inspired Prod. Grp., LLC*, 938 F.3d 1355, 1364 (Fed. Cir. 2019). Therefore, all factors identified by the Sixth and Federal circuits weigh against a finding of substantiality.

Just like the applicable Federal Circuit factors just discussed, other applicable Federal Circuit precedent suggest the absence of a substantial federal question in this case. The Federal Circuit "[has] made clear that a plaintiff's reliance on a patent as evidence to support its state law

claims does not necessarily require resolution of a substantial patent question." *Intellisoft, Ltd. v. Acer America Corporation*, 955 F.3d 927, 933 (Fed. Cir. 2020).

For example, in *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir. 2001), the Federal Circuit held that whether plaintiff's trade secrets were disclosed in defendant's patent application did not rise to the level of a substantial question. In *Uroplasty*, "the plaintiff's reliance on a patent to prove misappropriation of trade secrets did not 'necessarily depend[ ] on resolution of a substantial question of federal patent law.'" *Intellisoft*, 955 F.3d at 933 (quoting *Uroplasty* at 1279–80). Here, the state court would be deciding even less. Holding that there was misappropriation of a trade secret disclosed in a patent rises nearly to the level of determining patent infringement because it is holding that something disclosed by the patent was misappropriated. Here, a state court would only be determining that the patent infringement suit is nonfrivolous, not that there was any actual misappropriation.

Thus, under both Sixth Circuit and Federal Circuit precedent, the patent issue raised by the *Pullman* claim does not meet the substantiality prong of the substantial-federal-question doctrine.

"[A] patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded claims." *NeuroRepair*, 781 F.3d at 1344. The Court cannot say that a patent law issue *is* (or even is encompassed by) a necessary element of the *Pullman* claim. The Court certainly understands Defendants' apparent view that the *Pullman* claim is a "thinly disguised patent infringement claim simply masquerading as a [*Pullman*] claim." *Inspired Dev. Grp.*, 938 F.3d at 1361. But the Court cannot and does not make its decision based on whether it might be tempted to use the verbal characterization of the *Pullman* claim. Instead, as *Inspired Dev. Grp.* and other Federal Circuit cases make clear, the Court must apply the applicable standards and principles as

discussed above, and do so based on the claim at issue as it is pled—and not based on what the claim is intended to *avoid* pleading.

For all of these reasons, the substantial-federal-question exception does not apply. Accordingly, the well-pleaded complaint rule governs here, and its application makes clear that there is no federal-question jurisdiction in this case.

## CONCLUSION

For the reasons discussed herein, the Court will grant the Motion (Doc. No. 14). The Clerk is DIRECTED to remand the case to the Chancery Court of Davidson County.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE